UNITED STATES DISTRICT COURT
DISTRICT F CONNECTICUT

FILED

**CYNTHIA LEWIS**

2019 MAY 14 P 2: 29

**V.**

US DISTRICT COURT
BRIDGEPORT CT

3:19 cv 704 (CSH)

**GUARDIAN LOAN COMPANY,**
**WELLS FARGO BANK, N.A.,**
**WELLS FARGO HOME MORTGAGE, INC.,**
**INDYMAC BANK FSB,**
**BANK OF AMERICA NATIONAL ASSOCIATION,**
**LASALLE NATIONAL BANK AS TRUSTEE FOR**
**WELLS FARGO HOME EQUITY TRUST 2004-1,**
**U S BANK NATIONAL ASSOCIATION, AS TRUSTEE**
**SUCCESSOR IN INTEREST TO BANA AS TRUSTEE**
**FOR WELLS FARGO HOME EQUITY TRUST MORTGAGE**
**PASS THROUGH CERTIFICATES, SERIES 2004-1**

## COMPLAINT

Plaintiff, Cynthia Lewis, by and through Plaintiff's undersigned counsel, hereby submits this Complaint against Defendants, and in support thereof, states as follows:

### I.   JURISDICTION

1.   Jurisdiction is invoked pursuant to 28 U.S.C. SS 1331 & 1332; 18 U.S.C. $ 1964(c), for Civil R.I.C.O; 18 U.S.C. S 196a(c) of the Federal Racketeer Influenced and Corrupt Organizations Act (R.I.C.O.), 18 U.S.C. SS 1961-1968, ef. seg., and supplemental jurisdiction.

.

### II.   STATEMENT OF FACTS

2.   Plaintiff in this matter is Cynthia Lewis, a resident of the State of Connecticut.

3.   On January 23, 2004, the Trumbull Clerk recorded an instrument titled "QUIT CLAIM DEED" at Book 1267 / Page 514 wherein Lewis is declared the grantee and sole

owner of the property known as 1020 Old Town Road, Trumbull, CT 06611 ("subject property").

4.     Also on January 23, 2004, the Trumbull Clerk recorded an instrument titled "OPEN-END MORTGAGE DEED" at Book 1267 / Page 516 that is dated December 23, 2003.

5.     In the purported Open-End Mortgage Deed with an adjustable rate rider, Guardian Loan Co. Massapequa Inc. (hereafter referred to as "Guardian") is declared to be a corporation existing under the laws of the State of New York and the lender of $205,000.00, and Lewis designated as the "Borrower".

6.     Guardian, as the purported lender designated within the mortgage instrument recorded on January 23, 2004 did not suffer a real and ascertainable loss of $205,000.00 on December 23, 2003 for the following reasons:

        (a)     Guardian was not a depository institution capable of originating "mortgage loans" from its own reserves and did not suffer a real and ascertainable loss of $205,000.00;

        (b)     Guardian relied on table funded commitments supplied by third-party warehouse lenders to originate mortgage loans as the lender in "name only",

        (c)     Guardian never intended to suffer a real and ascertainable loss by lending $205,000.00 to Lewis from its own reserves and or deposits.

        (d)     Guardian converted Lewis from a "mortgagor" into a securities issuer under

Article 8 of Connecticut's Uniform Commercial Code ("CT UCC") wherein the paper promissory note ("note") and mortgage (hereby collectively referred to as the "mortgage

loan") instruments and or a transferable record a/k/a electronic promissory note ("eNote") were used by Guardian to create and sell "Mortgage Backed Securities" ("MBS"), Collateralized Debt Obligations ("CDO"), and derivatives using Lewis' collateral.

7.     Upon information and belief, the auditor avers that while the "mortgage transaction"

subject of this complaint does not incorporate Mortgage Electronic Registration Systems, Inc. ("MERS") within the aforementioned "mortgage" instrument recorded on January 23, 2004 by designating MERS as the "mortgagee" acting as "nominee" for Guardian, if the latter (Guardian) was a member of ERSCORP Holdings, Inc. ("MERSCORP"), Guardian may have caused a transferable record a/k/a electronic promissory note ("eNote") to be created and registered upon the MERS® eRegistry through "iRegistration".

8.     On January 26, 2004, the Trumbull Clerk recorded a "RELEASE OF MORTGAGE"

instrument at Book 1267 / Page 713 that designates IndyMac Bank FSB ("IndyMac") as the "discharger" of a "MORTGAGE" instrument recorded on October 30, 2000 at Book 1059 / Page 114 wherein Lewis was declared the "Borrower" and United National Mortgage, LLC ("UMC") was declared the "Lender".

9.     During the years 2004 and 2005, Guardian remained the purported "mortgagee" of record for the "mortgage" subject of this complaint was recorded on January 23, 2004, and there were no instruments recorded asserting a sale and or transfer of the "mortgage loan",

10.    On December 21, 2006, the Trumbull Clerk recorded an instrument titled "LIS PENDENS" at Book 1411 / Page 855 that references the "mortgage" that is the subject of this complaint, wherein Wells Fargo Bank National Association (hereafter referred to as "WFB") is declared the Plaintiff asserting ownership and possession of the "mortgage loan", while for the entire year of 2006, Guardian remained the purported "mortgagee" of record for the "mortgage" that is the subject of this complaint and that was recorded on January 23, 2004. There were no instruments recorded asserting a sale and or transfer of the "mortgage loan".

11.    WFB through Bendett & McHugh PC ("Bendett & McHugh") acting in the capacity of third-party debt collectors, commenced a foreclosure debt collection action by summons and complaint filed in the Superior Court of Connecticut – J.D. of Fairfield on December 26, 2006 in Docket No.  FBT-CV07-5006988-S.

12.    On May 14, 2007, the Trumbull Clerk recorded an instrument titled "ASSIGMENT OF MORTGAGE" at Book 1427 / Page 168 that references the "mortgage" that is the subject of this Complaint, and was submitted to the United States Bankruptcy Court for the Southern District of New York under Case No. 11-13987 by WFB / WFHM on September 15, 2016, wherein the following information is noted:

(a)    The top left side of the document declares that WFB prepared and requested the instrument be returned upon recording to WFB located at 3601 Minnesota Drive, Suite 200, Bloomington, MN 55435.

(b)    Guardian, through WFB as the former's purported "attorney in fact" is declared the "assignor" and WFB as the purported "successor by merger" to Wells Fargo Home Mortgage, Inc. (hereafter referred to as "WFHM") as the "assignee" of the

"mortgage" that is the subject of this complaint on November 11, 2004, without any mention of a transfer of the "note";

       (c)    The name and alleged signature of Raymond Poon appears within the instrument as a purported "Vice President Loan Documentation" for WFB as the alleged "Attorney in Fact" for Guardian, along with the names and alleged signatures of Lina Delgado and Sally Feldt appear as "Witnesses"; and

       (d)    The name and alleged signature of Minnesota Notary Public Christina A. Burrell appears within the instrument asserting that Raymond Poon appeared and presented sufficient identification to prove his status as a purported "Vice President Loan Documentation for WFB.

13.    The instrument titled "ASSIGNMENT OF MORTGAGE" dated November 11, 2004 and recorded by the Trumbull Clerk on May 14, 2007 is a nullity, by operation of law, because it failed to mention when and how the note was transferred.   Additionally the purported Assignment designates WFB as the alleged "attorney in fact" for Guardian, however there is no instrument annexed thereto in order to validate the purported agency relationship and powers allegedly bestowed upon WFB by Guardian.

14.    Additionally, upon information and belief, "mortgage related instruments" created by WFB that were recorded in land records displays the name and alleged signatures of Raymond Poon that are visibly different from Raymond Poon's alleged signature displayed within the aforementioned instrument titled "ASSIGNMENT OF MORTGAGE" dated November 11, 2004 and recorded by on May 14, 2007.

15.    Upon information and belief Ray Poon was, from April 2002 through March 2005, employed by WFB / WFHM as a purported "Production Supervisor" without any

designation as a "Vice President Loan Documentation" for WFB and or WFHM as declared within the aforementioned instrument titled "ASSIGNMENT OF MORTGAGE" dated November 11, 2004 and recorded by the Trumbull Clerk on May 14, 2007

16.    Upon information and belief Christina Burrell located in Minneapolis, Minnesota was, from April 2001 through October 2005, employed by WFHM as an "Operation Processor", without any designation as a Minnesota Notary Public as displayed within the aforementioned instrument titled "ASSIGNMENT OF MORTGAGE" dated November 11, 2004 and recorded by the Trumbull Clerk on May 14, 2007.

(a)    Upon information and belief, Raymond Poon lacked the authority as a purported "Vice President Loan Documentation" declared within the aforementioned instrument titled "ASSIGNMENT OF MORTGAGE" dated November 11, 2004 and recorded by the

Trumbull Clerk on May 14, 2007 and lacked knowledge as it pertains to the character, legality, ownership, and physical whereabouts of the original note and mortgage that is the subject of this complaint;

(b)    Neither Lina Delgado and nor Sally Feldt witnessed Raymond Poon sign the aforementioned instrument titled "ASSIGNMENT OF MORTGAGE" on November 11, 2004; and

(c) Minnesota Notary Public Christina A. Burrell never witnessed the signature of Raymond Poon on November 11, 2004, and never reviewed identification from Raymond Poon to prove the latter's asserted status as declared within the aforementioned instrument.

16.    On August 9, 2010, the Trumbull Clerk recorded an instrument titled "ASSIGMENT

OF MORTGAGE" at Book 1534 / Page 770 referencing the "mortgage" that is the

subject of this complaint, and filed with the United States Bankruptcy Court for the

Southern District of New York under Case No. 11-13987 on September 15, 2016,

wherein:

(a)    The top left side of the document designates Bendett & McHugh as the party

requesting return of the instrument upon recording;

(b)    WFB with a purported address of 3476 Stateview Boulevard, Fort Mill, SC

29715 is declared the "assignor" and Bank of America National Association ("BANA") as

"Successor by Merger" to LaSalle Bank National Association ("LaSalle Bank), as

Trustee for Wells Fargo Home Equity Trust 2004-1 ("WFHE Trust 2004-1") "c/o" WFB at

3476 Stateview Boulevard, Fort Mill, SC 29715 as the "assignee" of the "mortgage" that

is the subject of this complaint on July 28, 2010, without any mention of a transfer of the

"note";

(c)    The name and alleged signature of John Kennerty appears within the

instrument as the purported "Assistant Secretary" for WFB, along with the names and

alleged signatures of Camille Garcia and Rose Ana Cortinez appear as "Witnesses".;

and

(d)    The name and alleged signature of South Carolina Notary Public Wendy

Albertson Al-Hammadi appears within the instrument asserting that John Kennerty

appeared and presented sufficient identification to prove his status as a purported "Assistant Secretary" for WFB.

17.     The instrument titled "ASSIGNMENT OF MORTGAGE" dated July 28, 2010 and recorded by the Trumbull Clerk on August 9, 2010 is a nullity, by operation of law, because it failed to mention when and how the note was transferred.

18.     Further, the instrument is a nullity and no ownership of the note and or mortgage were transferred to BANA as Trustee for WFHE Trust 2004-1 on July 28, 2010 as declared within the aforementioned instrument recorded by the Trumbull Clerk on August 9, 2010 because according to the Pooling and Servicing Agreement ("PSA") for WFHE Trust 2004-1 that was filed with the Securities and Exchange Commission ("SEC") on April 13, 2004, wherein:

(a)     The "Closing Date" set forth at Article I – Section 1.01 is March 30, 2004;

(b)     Section 2.01 – Creation and Declaration of Trust Fund; Conveyance of Mortgage Loans, declared that Structured Asset Securities Corporation ("SASC") as the "Depositor", not WFB, would transfer mortgage loans to LaSalle Bank as Trustee for WFHE Trust 2004-1 by the March 30, 2004 "Closing Date", displaying a complete chain of indorsements of the "notes", the last paid to the order of LaSalle Bank as Trustee or in blank ("_____").;

(c)     Section 10.01(b) – REMIC Administration, declared "The Closing Date is hereby designated as the "Startup Day" of each REMIC within the meaning of section 860G (a) (9) of the Code. The latest possible maturity date for purposes of Treasury Regulation 1.860G-1(a)(4) will be the Latest Possible Maturity Date;

(d)     Section 10.02 – Prohibited Transactions and Activities, declared that LaSalle Bank as Trustee for WFHE Trust 2004-1 would not take any action to cause WFHE Trust 2004-1 to lose its status as a Real Estate Mortgage Investment Conduit ("REMIC") pursuant to Internal Revenue Code.; and

(e)     Section 11.06 – Governing Law, declared that WFHE Trust 2004-1 was created pursuant to and governed by New York law wherein New York Consolidated Laws, Estates, Powers and Trusts Law - EPT § 7-2.4 Act of trustee in contravention of trust, provides that: "If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void."

19.     John Kennerty, also known as Herman John Kennerty, whose name and alleged signature appears within the instrument titled "ASSIGNMENT OF MORTGAGE" dated July 28, 2010, recorded by the Trumbull Clerk on August 9, 2010, lacked knowledge as to the character, ownership, transfer, and possession of the original note and mortgage subject of this Complaint based upon his deposition given on May 21, 2010 in Geline v. Nw. Tr. Servs., No. 09-2-46576-2-SEA (Wash. Super. Ct.), wherein Mr. Kennerty admitted under oath to signing 50 to 150 mortgage related documents per day including, but not limited to, instruments styled as assignments of mortgage, declarations, and affidavits related to foreclosure without checking the information and relied on employees of another department to ensure the accuracy of the information, and that he and others with the same position could sign as a "Vice President Loan Documentation" for purposes of executing loan documents but were not otherwise officers of WFB and WFHM.

(a) Neither Camille Garcia and or Rose Ana Cortinez witnessed "John Kennerty" a/k/a Herman John Kennerty sign the aforementioned instrument titled "ASSIGNMENT OF MORTGAGE" on July 28, 2010; and

(b) South Carolina Notary Public Wendy Albertson Al-Hammadi never witnessed the signature of "John Kennerty" a/k/a Herman John Kennerty on July 28, 2010, and never reviewed identification from "John Kennerty" a/k/a Herman John Kennerty to prove the latter's asserted status as declared within the aforementioned instrument.

20.    On April 12, 2011, the Trumbull Clerk recorded an instrument titled "ASSIGMENT OF MORTGAGE" at Book 1561 / Page 811 that referenced the "mortgage" that is the subject of this complaint and was filed with the United States Bankruptcy Court for the Southern District of New York under Case No. 11-13987 on September 15, 2016, wherein:

(a)    The top left side of the document designates Bendett & McHugh as the party requesting return of the instrument upon recording;

(b)    WFB as the alleged "successor by merger" to WFHM with a purported address 3476 Stateview Boulevard, Fort Mill, SC 29715 is declared the "assignor" and US Bank National Association ("US Bank") as Trustee, "successor in interest to" BANA as Trustee for "Wells Fargo Home Equity Trust Mortgage Pass-Through Certificates, Series 2004-1" ("WFHE Trust 2004-1") as the "assignee" of the "mortgage" that is the subject of this complaint on April 4, 2011, without any mention of a transfer of the "note".;

(c )    The name and alleged signature of Mike Murphy appears within the instrument as the purported "VP Loan Documentation" for WFB as the alleged

"successor by merger" to WFHM, along with the names and alleged signatures of two persons as Witnesses" whose names and purported signatures are illegible.; and

(d)    The name and alleged signature of Minnesota Notary Public Taehoony Chin appears within the instrument asserting that Mike Murphy appeared and presented sufficient identification to prove his status as a purported "VP Loan Documentation" for WFB as the alleged "successor by merger" to WFHM.

21.    The instrument titled "ASSIGNMENT OF MORTGAGE" dated April 4, 2011 and recorded by the Trumbull Clerk on April 12, 2011 is a nullity, by operation of law, because it failed to mention when and how the note was transferred.

22.    Additionally, the purported assignment of the mortgage that is the subject of this complaint recited within the instrument titled "ASSIGNMENT OF MORTGAGE" dated April 4, 2011 and recorded by the Trumbull Clerk on April 12, 2011 contradicts the alleged assignment of the mortgage recited within the instrument titled "ASSIGNMENT OF MORTGAGE" dated July 28, 2010 and recorded by the Trumbull Clerk on August 9, 2010 23.    Furthermore, upon information and belief,

(a)    Mike Murphy lacked the authority as a purported "VP Loan Documentation" declared within the instrument titled "ASSIGNMENT OF MORTGAGE" dated April 4, 2011 and recorded by the Trumbull Clerk on April 12, 2011 and lacked knowledge as it pertains

to the character, legality, ownership, and physical whereabouts of the original note and mortgage subject of this Complaint;

(b)     Neither of the unidentifiable persons appearing as "witnesses" witnessed Mike Murphy sign the aforementioned instrument titled "ASSIGNMENT OF MORTGAGE" on April 4, 2011; and

(c) Minnesota Notary Public Taehoony Chin never witnessed the signature of Mike Murphy on April 4, 2011, and never reviewed identification from Mike Murphy to prove the latter's asserted status as declared within the aforementioned instrument.

24.     An instrument titled "ASSIGNMENT OF DEED OF TRUST" recorded with the County Clerk for Skagit County, Washington on December 20, 2010, displaying the name and alleged signature of Minnesota Notary Public Taehoony Chin that is different from his /her alleged signature displayed within the aforementioned instrument titled "ASSIGNMENT OF MORTGAGE" dated April 4, 2011 and recorded by the Trumbull Clerk on April 12, 2011

25.     An instrument titled "CORPORATE ASSIGNMENT OF DEED OF TRUST" recorded by the Clerk for Pike County, Mississippi on January 30, 2012 wherein Taehoony Chin is designated the preparer of the instrument on behalf of WFB out of Minneapolis, MN.

26.     On April 13, 2011, WFB was issued a cease and desist order from the Comptroller of the Currency of the United States of America ("Comptroller") through his national bank examiners and other staff of the Office of the Comptroller of the Currency ("OCC") as part of an interagency horizontal review of major residential mortgage servicers and examination of the residential real estate mortgage foreclosure processes, titled In the Matter of Wells Fargo Bank, N.A. (Order No.: AA-EC-2011-19)

wherein WFB as servicer (not owner) for a portfolio of 8,900,000 was prohibited from further engagement in the following unfair, deceptive, and illegal practices including, but not limited to:

(a)     Filing or causing to be filed in state and federal courts affidavits executed by its employees or employees of third-party service providers making various assertions,

such as ownership of the mortgage note and mortgage, the amount of the principal and interest due, and the fees and expenses chargeable to the borrower, in which the affiant represented that the assertions in the affidavit were made based on personal knowledge or based on a review by the affiant of the relevant books and records, when, in many cases, they were not based on such personal knowledge or review of the relevant books and records;

(b)     Filing or causing to be filed in state and federal courts, or in local land records offices, numerous affidavits or other mortgage-related documents that were not properly notarized, including those not signed or affirmed in the presence of a notary;

(c)     Litigating foreclosure proceedings and initiating non-judicial foreclosure proceedings without always ensuring that either the promissory note or the mortgage document were properly endorsed or assigned and, if necessary, in the possession of the appropriate party at the appropriate time;

(d)     Failing to devote sufficient financial, staffing and managerial resources to ensure proper administration of its foreclosure processes;

(e)     Failing to devote to its foreclosure processes adequate oversight, internal controls, policies, and procedures, compliance risk management, internal audit, third party management, and training; and

(f) Failing to sufficiently oversee outside counsel and other third-party providers handling foreclosure-related services.

27.     On May 20, 2011, the Trumbull Clerk recorded an instrument titled "ASSIGMENT OF MORTGAGE" at Book 1564 / Page 115 that references the "mortgage" that is the subject of this complaint and was filed with the United States Bankruptcy Court for the Southern District of New York under Case No. 11-13987 on September 15, 2016, wherein:

(a)     The top left side of the document designates Bendett & McHugh as the party requesting return of the instrument upon recording;

(b)     BANA as Trustee for WFHE Trust 2004-1 "c/o" WFB at 3476 Stateview Boulevard, Fort Mill, SC 29715 is declared the "assignor" and US Bank as Trustee, "successor in interest to" BANA as Trustee for WFHE Trust 2004-1 as the "assignee" of the "mortgage" that is the subject of this complaint on May 16, 2011, without any mention of a transfer of the "note".;

(c )    The name and alleged signature of Wylin Xiong appears within the instrument as a purported "Vice President Loan Documentation" for WFB, along with the names and alleged signatures of two persons as "Witnesses" whose names and purported signatures are illegible.; and

(d)     The name and alleged signature of Minnesota Notary Public Amy Marie Mulligan Toske appears within the instrument asserting that Wylin Xiong appeared and

presented sufficient identification to prove his status as a purported "Vice President Loan Documentation".

28.     The instrument titled "ASSIGNMENT OF MORTGAGE" dated May 16, 2011 and recorded by the Trumbull Clerk on May 20, 2011 is a nullity, by operation of law, because it failed to mention when and how the note was transferred.

29.     Additionally, the alleged assignment of the mortgage that is the subject of this complaint that is recited within the instrument titled "ASSIGNMENT OF MORTGAGE" dated May 16, 2011 and recorded by the Trumbull Clerk on May 20, 2011 contradicts the alleged assignments of the mortgage recited within the instruments titled "ASSIGNMENT OF MORTGAGE" recorded by the Trumbull Clerk on August 9, 2010) and April 12, 2011, and upon information and belief,

(a) Wylin Xiong lacked the authority as a purported "Vice President Loan Documentation" declared within the instrument titled "ASSIGNMENT OF MORTGAGE" dated May 16, 2011 and recorded by the Trumbull Clerk on May 20, 2011 and lacked knowledge as it pertains to the character, legality, ownership, and physical whereabouts of the original note and mortgage subject of this Complaint;

(b)     Neither of the unidentifiable persons appearing as "witnesses" witnessed Wylin Xiong sign the aforementioned instrument titled "ASSIGNMENT OF MORTGAGE" on May 16, 2011; and

(c) Minnesota Notary Public Amy Marie Mulligan Toske never witnessed the signature of Wylin Xiong on May 16, 2011, and never reviewed identification from Wylin Xiong to prove the latter's asserted status as declared within the instrument.

30.    Further, the instrument titled "ASSIGNMENT OF MORTGAGE" dated May 16, 2011 and recorded by the Trumbull Clerk on May 20, 2011 was created by WFB or upon the latter's request in violation of the cease and desist order entered on April 13, 2011 in In the Matter of Wells Fargo Bank, N.A. (Order No.: AA-EC-11-19).

31.    On or about August 22, 2011, Lewis filed a Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court for the Southern District of New York under Case No. 11-13987.

32.    On March 12, 2012, the Department of Justice ("DOJ"), the Department of Housing and Urban Development ("HUD") and 49 State Attorney Generals, including the Connecticut State Attorney General ("CT AG"), announced a $25 billion agreement, with the nation's five largest mortgage servicers (not owners of mortgage loans) of which included WFB, in order to:

(a)    address mortgage loan servicing and foreclosure abuses.

(b)    prevent foreclosure abuses such as forgery, false notarizations, and other improper documentation practices, and lost paperwork.

(c)    require stricter oversight of foreclosure processing, including third-party vendors of which includes foreclosure attorneys.

(d)    new requirements to undertake pre-filing reviews of certain documents filed in bankruptcy court.

(e)    create new servicing standards in order to make foreclosure a last resort by requiring servicers to evaluate homeowners for other loss mitigation options first.;

(f)    restrict servicers from foreclosing while the homeowner is being considered for a loan modification.

(g)     require servicers to remediate any harm to borrowers that are identified in quarterly reviews overseen by the monitor and, in some instances, conduct full look-backs to identify any additional borrowers who may have been harmed.; AND

(h)     require any servicer who violates the requirements of the consent judgment to pay penalties of up to $1 million per violation or up to $5 million for certain repeat violations.

33.    On March 14, 2012, the United States of America and 49 State Attorney Generals

(including the CT AG) filed a civil complaint in the United States District Court for the District of Columbia (See United States of America, et.al. v. Bank of America N.A., et al., (Docket No. 1:12-cv- 00361 RMC)), wherein the CT AG appeared on behalf of the citizens of Connecticut pursuant to protection enforcement authority conferred on the CT AG by state law and pursuant to parens patriae and common law authority, seeking injunctive relief, restitution for consumer, and civil penalties against WFB as a servicer (not owner) for a portfolio of residential mortgage loans for engaging in unfair, deceptive, and illegal practices including, but not limited, "Unfair, Deceptive, and Unlawful Modification and Loss Mitigation Processes" and "Wrongful Conduct Related to Foreclosures" such as:

(a) failing to perform proper loan modification underwriting;

(b) failing to gather or losing loan modification application documentation and other

paper work;

(c) failing to provide adequate staffing to implement programs;

(d) failing to adequately train staff responsible for loan modifications;

(e) failing to establish adequate processes for loan modifications;

(f) allowing borrowers to stay in trial modifications for excessive time periods;

(g) wrongfully denying modification applications;

(h) failing to respond to borrower inquiries;

(i) providing false or misleading information to consumers while referring loans to foreclosure during the loan modification application process;

(j) providing false or misleading information to consumers while initiating foreclosures where the borrower was in good faith actively pursuing a loss mitigation alternative offered by the Bank;

(k) providing false or misleading information to consumers while scheduling and conducting foreclosure sales during the loan application process and during trial loan modification periods;

(l) misrepresenting to borrowers that loss mitigation programs would provide relief

from the initiation of foreclosure or further foreclosure efforts;

(m) failing to provide accurate and timely information to borrowers who are in need of, and eligible for, loss mitigation services, including loan modifications;

(n) falsely advising borrowers that they must be at least 60 days delinquent in loan

payments to qualify for a loan modification;

(o) miscalculating borrowers' eligibility for loan modification programs and improperly denying loan modification relief to eligible borrowers;

(p) failing to properly identify the foreclosing party.

(q) charging improper fees related to foreclosures.;

(r) preparing, executing, notarizing or presenting false and misleading documents,

filing false and misleading documents with courts and government agencies, or otherwise using false or misleading documents as part of the foreclosure process (including, but not limited to, affidavits, declarations, certifications, substitutions of trustees, and assignments).;

(s) preparing, executing, or filing affidavits in foreclosure proceedings without personal knowledge of the assertions in the affidavits and without review of any information or documentation to verify the assertions in such affidavits. This practice of repeated false attestation of information in affidavits is popularly known as "robosigning." Where third parties engaged in robosigning on behalf of the Banks, they did so with the knowledge and approval of the Banks;

(t) executing and filing affidavits in foreclosure proceedings that were not properly notarized in accordance with applicable state law; AND

(u) misrepresenting the identity, office, or legal status of the affiant executing foreclosure-related documents.

34.   On April 4, 2012, WFB entered into a settlement agreement with the United States of America and 49 State Attorney Generals (including the CT AG) that was coined the "National Mortgage Settlement", wherein WFB was from thereon prohibited

from further engagement in the aforementioned unfair, deceptive, and illegal practices cited in the March 14, 2012 civil complaint in <u>United States of America, et.al. v. Bank of America N.A.</u>, et.al,(Docket No. 1:12-cv-00361 RMC) that took place as of 11:59 p.m., Eastern Standard Time, on February 8, 2012, to avoid penalties of up to $1 million per violation or up to $5 million for certain repeat violations under the following laws set forth within the "Terms and Conditions" :

      (a)    The Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA");

      (b)    The False Claims Act.;

      (c)    The Racketeer Influenced and Corrupt Organizations Act.;

      (d)    The Real Estate Settlement Procedures Act.;

      (e)    The Fair Credit Reporting Act.;

      (f)    The Fair Debt Collection Practices Act.;

      (g)    The Truth in Lending Act.;

      (h)    The Interstate Land Sales Full Disclosure Act.;

      (i)    15 U.S.C. § 1691(d) ("Reason for Adverse Action") or § 1691(e) ("Appraisals"); AND

      (j)    Sections 502 through 509 (15 U.S.C. § 6802-6809) of the Gramm-Leach Bliley Act except for section 505 (15 U.S.C. § 6805) as it applies to section 501(b) (15 U.S.C. § 6801(b)).

35.    WFB and/or the latter's purported counsel, submitted he note instruments in Lewis' bankruptcy proceedings for the instrument submitted in Case No. 11-13987

before the U.S. Bankruptcy Court for the Southern District of New York on December 31, 2013; for the instrument submitted in Case No. 11-13987 before the U.S. Bankruptcy Court for the Southern District of New York on September 15, 2016; and for the instrument submitted in Case No. Case 18-51066 before the U.S. Bankruptcy Court for the District of Connecticut on October 19, 2018. Page four of four from each of the three note instruments displays an undated stamp presented as an indorsement in blank by WFHM which does not conform with Section 2.01 ("Creation and Declaration of Trust Fund; Conveyance of Mortgage Loans") of the PSA for WFHE Trust 2004-1 that is dated March 1, 2004, and declared in relevant part that: (a)... the Depositor does hereby transfer, assign, set over, deposit with and otherwise convey to the Trustee, without recourse, subject to Sections 2.02, 2.04, 2.05 and 2.06, in trust, all the right, title and interest of the Depositor in and to the Mortgage Loans.... (b) In connection with such transfer and assignment, the Seller, on behalf of the Depositor does hereby deliver to, and deposit with, or cause to be delivered to and deposited with, the Trustee, and/or the Custodian acting on the Trustee's behalf, the following documents or instruments with respect to each Mortgage Loan (each, a "Custodial File") so transferred and assigned: (i) the original Mortgage Note endorsed without recourse in proper form to the order of the Trustee, or

in blank (in each case, with all necessary intervening endorsements, as applicable)..." .

36.     Further, each of the aforementioned note instruments displays a stamp on page 4 of 4 that reads: "ALLONGE ATTACHED FOR THE PURPOSE OF ENDORSING THE NOTE". However, the note instrument that WFB filed with the U.S. Bankruptcy Court for the Southern District of New York on December 31, 2013 under Case No.

11-13987 displays a separate page titled "Allonge to Promissory Note" located exactly after page 4 of 4 of the note instrument which is followed by a one (1) page "Prepayment Addendum to Note". Without any reason and or explanation by WFB, unlike the aforementioned note instrument which WFB filed with the U.S. Bankruptcy Court for the Southern District of New York on December 31, 2013 under Case No. 11-13987, the note instruments that WFB filed with the U.S. Bankruptcy Courts for the Southern District of New York on September 15, 2016 under Case No. 11-13987 on September 15, 2016 and the District of Connecticut on October 19, 2018 under Case No. 18-51066 displays immediately after page 4 of 4 of the note instrument a one (1) page "Prepayment Addendum to Note" that is followed by a separate page titled "Allonge to Promissory Note".

37.     Further, upon information and belief, Beverly Crockett whose name and alleged signature is displayed within as a purported "Vice President Loan Documentation" within the stamp affixed upon page 4 of 4 of the note instruments and the name and alleged signature of Daniel McNamara displayed as an alleged "Assistant Vice President" for Guardian upon the separate page titled "Allonge to Promissory Note" seen within the same instruments: (1) lacked the capacities claimed; (2) lacked knowledge as to the character, legality, ownership, transfer, and whereabouts of the original note and mortgage subject of this Complaint; (3) never physically held the original note and mortgage subject of this complaint.

38.     The purported endorsement on page 4 of 4 of the aforementioned note instruments

along with the purported endorsement on the separate page titled "Allonge to Promissory Note" are not original signatures to qualify as endorsements pursuant to CT UCC (See §§ 42a-3-308 and 42a-3-204).

39.     Upon information and belief, WFB created out of "thin air" the aforementioned separate page titled "Allonge to Promissory Note" along the undated stamp presented as an endorsement by WFHM on page 4 of 4 of the note instruments similar to the instructions set forth in the "Wells Fargo Home Mortgage Foreclosure Attorney Procedure Manual, Version 1" which is a step-by-step guide created by WFB and WFHM that is, and previously exposed in Mota v. Wells Fargo Bank, N.A., et al. (Adv. Proc. No. 13-01553) upon Hon. Judge Allan Gropper allowing a homeowner's attorney to present the manual into evidence.

40.     Upon information and belief the separate page titled "Allonge to Promissory Note" is invalid by declaring there was enough room on page 4 of 4 of the note instruments presented by WFB in order for Guardian as the original payee upon the note to indorse page 4 of 4 without an "Allonge", and there is no evidence that the purported "Allonge to Promissory Note" was permanently affixed to the original note in order to qualify as an "Allonge".

41.     Assuming the purported "Allonge to Promissory Note" constitutes an authentic indorsement by Guardian as the original payee upon the note and the undated stamp presented as an indorsement in blank by WFHM displayed on page 4 of 4 of the note are void of any falsities and forgery, the note remains void of the chain of dated indorsements to reflect the alleged transfers of the mortgage recited within the aforementioned instruments titled "ASSIGNMENT OF MORTGAGE", from:

(a) Guardian to WFB as the purported "successor by merger" to WFHM on November 11, 2004;

(b) WFB to BANA as "Successor by Merger" to LaSalle Bank as Trustee for WFHE

Trust 2004-1 on July 28, 2010.

(c) WFB as the purported "successor by merger" to US Bank as Trustee, "successor in interest to" BANA as Trustee for WFHE Trust 2004-1 on April 4, 2011; and

d. BANA as Trustee for WFHE Trust 2004-1 to US Bank as Trustee for WFHE Trust 2004-1 on May 16, 2011.

41.     The "mortgage loan" subject of this complaint may constitute a predatory, usurious, and unconscionable origination in violation of the Home Ownership Equity Protection Act ("HOEPA") (See 15 U.S.C. §§ 1601-02, §§1639-41), the Fair Housing Act ("FHA") and Equal Credit Opportunity Act ("ECOA") (See 15 U.S.C. § 1691 et seq.) if. Lewis, a woman of African American descent: (1) was denied financing with better terms and conditions suitable for Lewis' finances; (2) was denied financing with better terms and conditions that were made available to similarly situated persons classified as White (i.e. Non-Black) and or Male; (3) never received disclosure that Lewis may lose her home upon entering the "mortgage loan" subject of this complaint; (4) never attended credit counseling to learn more about the "mortgage loan" subject of this Complaint; and (5) was steered into a transaction with a pre-payment penalty.

42.     Guardian was not a depository financial institution capable of lending monies from its own deposits and personal reserves as of December 23, 2003.

43.     Guardian did not suffer a real and ascertainable loss of $205,000.00 by loaning monies to Cynthia Lewis on December 23, 2003 towards the mortgage loan subject of this Complaint.

44.     The transaction subject of this Complaint is predatory in violation of applicable state and federal consumer lending laws.

45.     There is no evidence proving WFB's purported status as the "attorney in fact" for Guardian as declared within the instrument titled "ASSIGNMENT OF MORTGAGE" dated

November 11, 2004, and recorded on May 14, 2007.

46.     The four instruments titled "ASSIGNMENT OF MORTGAGE" all fail to mention when and how the original note was transferred and, therefore, are nullities, by operation of law.

47.     The three instruments titled "ASSIGNMENT OF MORTGAGE" assert transfers of the mortgage subject of this report after the March 30, 2004 closing date for WFHE Trust 2004-1 set forth within a binding PSA, are in contravention of the PSA for the New York governed WFHE Trust 2004-1 which renders the instruments void by operation of New York Consolidated Laws, Estates, Powers and Trusts Law - EPT § 7-2.4 Act of trustee in contravention of trust.

48.     The recitals within the three instruments titled "ASSIGNMENT OF MORTGAGE" contradict one another as it pertains to the alleged transfer and assignment of the mortgage subject of this Complaint.

49.     The note instruments are in contravention of the PSA for WFHE Trust 2004-1 which is governed by New York law and therefore void by operation of New York

Consolidated Laws, Estates, Powers and Trusts Law - EPT § 7-2.4 Act of trustee in contravention of trust, and the note instruments are void of dated indorsements to reflect the alleged transfers of the mortgage recited within instruments titled "ASSIGNMENT OF MORTGAGE".

50.     The individuals whose names and alleged signatures and notarization are affixed upon the instruments titled "ASSIGNMENT OF MORTGAGE", lacked the capacities claimed, and lacked knowledge pertaining to the character, legality, ownership, transfer, and whereabouts of the "mortgage loan" subject of this Complaint.

51.     The notarizations displayed within the instruments titled "ASSIGNMENT OF MORTGAGE" never witnessed the signatures and identification of the persons displayed within the instruments as required by applicable state notary laws.

52.     The name and alleged signature affixed upon the separate page titled "Allonge to Promissory Note" displayed along with the name and alleged signature affixed upon the stamp on page 4 of 4 of the note instrument, lacked the capacities claimed, and lacked knowledge pertaining to the character, legality, ownership, transfer, and whereabouts of the "mortgage loan" subject of this Complaint.

53.     WFB and WFHM never took ownership of the original mortgage loan.

54.     US Bank as Trustee for WFHE Trust 2004-1 never owned the mortgage loan subject of this Complaint and, currently, has no economical or beneficial interest in the paper "mortgage loan", and has no involvement with the pending foreclosure action.

55.     Upon information and belief, the auditor avers the note instrument submitted to the Superior Court of Connecticut – J.D. of Fairfield under Case No.: FBT-

CV07-5006988-S by WFB that has yet to be retrieved, along with the instruments filed with the United States

Bankruptcy Court for the District of Connecticut in Case No.'s 11-13987 and 18-51066 are only scanned images, not true copies of the original paper note instrument that is the subject of this Complaint because the original was deliberately destroyed by WFS and or the latter's successors and assigns immediately or shortly after their execution by Lewis, as a result of the creation of an electronic note equivalent to create "Mortgage Backed Securities" (MBS).

56.    The aforementioned facts display a continuation of   the foreclosure debt collection action commenced by WFB under Superior Court of Connecticut – J.D. of Fairfield under Case No.: FBT-CV07-5006988-S, and the documents submitted therein and to the United States Bankruptcy Court for the District of Connecticut in Case No.s 11-13987 and 18-51066, display WFB's / WFHM's continued engagement in unfair, deceptive, and unlawful practices that were prohibited by: (1) the April 13, 2011 cease and desist order entered in In the Matter of Wells Fargo Bank, N.A. (OCC No. AA-EC-11-19) and (2) the National Mortgage Settlement and Consent Judgment arising from civil complaint in <u>United States of America, et.al. v. Bank of America N.A., et al.,</u> (Docket No. 1:12-cv-00361 RMC) which WFB and its affiliate companies entered on April 4, 2012.


<u>COUNT ONEVIOLATION OF THE FEDERAL CIVIL RICO</u>
<u>(18 USC §1962(C) ACTIONABLE PURSUANT</u>
<u>TO 18 USC § 1964(C) (As to all Defendants)</u>

1 - 56. The Plaintiff adopts the factual allegations set forth above in paragraphs 1-56 as though fully set for herein by reference and made a part of this Count One.

57.    The Defendants designated in count one (1) constitute an "Enterprise" as defined in 18 U.S.C. §1961(4).

58.    The enterprise and or enterprises have an existence apart from and beyond the racketeering activity complained of in this action.

59.    The Defendants violated the Federal Civil RICO statute by conducting or participating, directly or indirectly, in the conduct of the   affairs of an enterprise or enterprises, through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c), as set forth within paragraphs 1-56 as though fully incorporated herein by reference.

60.    The acts by the Defendants designated in count one (1) constitutes a pattern of racketeering activity that has continued and escalated beginning in or around January 23, 2004 and continues to present date.

61.    The acts by the defendants designated in count one (1) constitutes prohibited activities in violation of 18 U.S.C. §1962(c) for the Defendants have received income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which they have participated to use or invest, directly or indirectly, any part of the income, or the proceeds of the income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in or the activities of which affect trade or commerce.

62.    The aforementioned acts by Defendants constitutes identity theft in violation of CGS § 53a-129b wherein the Defendants knowingly used the Plaintiff's personal identifying information to obtain or attempt to obtain money, credit, goods, services, or

property deriving from the fraud in factum transaction complained of herein, and without the consent of the Plaintiff.

63.    The aforementioned acts by Defendants constitutes trafficking in personal identifying information in violation of CGS § 53a-129e wherein the Defendants have sold, given, or otherwise transferred personal identifying information of the Plaintiff knowing that such information derives from the fraud in factum transaction complained of herein, knowing that such information has been obtained without the authorization of Plaintiff, and Defendants intended to use such information for an unlawful purpose.

64.    The aforementioned acts by Defendants constitutes criminal impersonation in violation of CGS § 53a-130 wherein the Defendants have impersonated a tradename, WFB, as the lender that suffered a loss of $205,000 on January 23, 2004 knowing otherwise to be true, and misrepresenting BANA to be the owner of the fraud in factum transaction complained of herein knowing otherwise to be true, with intent to obtain a benefit or to injure or defraud the Plaintiff; or with intent to obtain a benefit or to injure or defraud Plaintiff; or with intent to defraud, deceive or injure Plaintiff and such acts resulted in personal injury or financial loss to Plaintiff and the initiation of judicial proceedings against Plaintiff.

65. The aforementioned acts by Defendants constitutes forgery in violation of CSG § 53a-139 wherein the Defendants, with intent to defraud, deceive or injure Plaintiff, falsely made, completed or altered written instruments or issued or possessed written instruments which they knew to be forged, which is or purports to be, or which is calculated to become or represent if completed: (1) a contract, assignment, commercial instrument or other instrument which does or may evidence, create, transfer, terminate

or otherwise affect a legal right, interest, obligation or status; or (2) a public record or an instrument filed or required or authorized by law to be filed in or with a public office or public servant; or (3) written instruments officially issued or created by a public office, public servant or governmental instrumentality.

66.     The aforementioned acts by Defendants constitutes criminal simulation in violation of CGS § 53a-141 wherein the Defendants, with knowledge of its true character and with intent to defraud, issued or possessed falsely made security instruments encumbering title to Plaintiffs' real property.

67.     The aforementioned acts by Defendants constitutes tampering with or fabricating physical evidence in violation of CGS § 53a-155 wherein, believing that an official proceeding was pending, or about to be instituted, the Defendants: (1) altered, destroyed, concealed or removed any record, document or thing with purpose to impair its verity or availability in such official proceeding; or (2) made, presented or used any record, document or thing knowing it to be false and with purpose to mislead a public servant who is or may be engaged in such official proceeding.

68.     The acts by the Defendants constitutes mail fraud in violation of 18 U.S.C. §1341 for the defendants devised a scheme to defraud, obtain money, or the subject property by means of false or fraudulent pretenses, representations, or promises, to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use counterfeit obligations, securities, for the purpose of executing such scheme or artifice, placed in post offices or authorized depository for mail matter, to be sent or delivered by the Postal Service, deposited, or caused to be deposited, to be sent or

delivered by private or commercial interstate carrier, or knowingly caused to be delivered by mail or such carrier.

69.     The acts Defendants constitutes fictitious names and addresses in violation of 18 U.S.C. §1342 for the defendants, for the purpose of conducting promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in section 1341, or any other unlawful business, used or assumed, or requested others to be addressed by, fictitious, false, or assumed titles, or names, other than their own proper names.

70.     The acts by the Defendants constitutes wire fraud in violation of 18 U.S.C. §1343 for the defendants devised or intended to devise a scheme or artifice to defraud, for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted by means of wire in interstate commerce, writings for the purpose of executing such scheme or artifice.

71.     The acts by the Defendants constitutes transportation of stolen goods, securities, moneys, and or articles used in counterfeiting in violation of 18 U.S.C. § 2314 for the defendants transported, transmitted, or transferred in interstate commerce, securities of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud, and devised a scheme or artifice to defraud, for obtaining money or property from the Plaintiff by means of false or fraudulent pretenses, representations, or promises, transported or caused to be transported interstate in the execution or concealment of a scheme or artifice to defraud the Plaintiff of money or property having a value of $5,000 or more, with unlawful or fraudulent intent, transported in interstate commerce falsely made, forged, altered, or counterfeited securities knowing the same to have been falsely made, forged, altered, or counterfeited.

72.    The acts by the Defendants constitutes interference with commerce by threats or violence in violation of 18 U.S.C. § 1951 for the defendants have: (a) obstructed, delayed, or affected commerce by robbery or extortion or attempted or conspired so to do, or committed or threatened physical removal of Plaintiffs from the subject property, and the taking of the subject property under color of official right.

73.    The aforementioned acts by the Defendants constitutes laundering of falsely made

monetary instruments in violation of 18 U.S.C. § 1956 because the Defendants: (1) knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducted or attempted to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity, with (i) the intent to promote the carrying on of specified unlawful activity; or (ii) the intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or  knowing that the transaction is designed in whole or in part (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or (ii) to avoid a transaction reporting requirement under State or Federal law.

74.    The aforementioned acts by the Defendants constitutes engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957 upon the Defendants knowingly engaging or attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity.

75. The acts by the Defendants constitutes misprision of felony in violation of 18 U.S.C.

§ 4 for the defendants had knowledge of the actual commission of a felony cognizable by

a court of the United States, and concealed said knowledge, and did not as soon as

possible make known the same to some judge or other person in civil or authority under

the United States.

76.    The acts by the Defendants constitutes conspiracy against rights in violation of

18

U.S.C. §241 for the defendants conspired to injure, oppress, threaten, or intimidate the

Plaintiff in the free exercise or enjoyment of rights or privilege secured to Plaintiffs by

the Constitution and laws of the United States, including but not limited to: (i) the right to

contract; (ii) the right to own, maintain, and be secure in Plaintiffs' property right from

unlawful seizures; AND (iii) to be free of usury.

77.    The aforementioned acts on the part of the Defendants were intentional, willful,

deliberate, wonton, reckless, actuated with forethought and malice, performed under

color of law, without regard to the damage that these acts might cause the plaintiff.

78. The acts by the Defendants violates 18 USC §1962(c) and has caused injury to the

Plaintiff in actual damages of emotional distress, loss of monies paid by the Plaintiff

towards a fraud in factum "mortgage transaction", and other costs to defend Plaintiff's

real property and reputation.

79.    Plaintiff has been damaged thereby.


COUNT TWO          VIOLATION OF THE CONNECTICUT CIVIL RICO
                   ACTIONABLE PURUANT TO CONN. GEN.

STAT. § 53-393, ET SEQ.

1 - 56. The Plaintiff adopts the factual allegations set forth above in paragraphs 1-56 as though fully set for herein by reference and made a part of this Count Two.

57.     The Defendants designated in count one (1) constitute an "Enterprise" as defined in Conn. Gen. Stat. § 53-394(c).

58.     The enterprise and or enterprises have an existence apart from and beyond the racketeering activity complained of in this action.

59.     The Defendants violated the Connecticut Civil RICO statute by conducting or participating, directly or indirectly, in the conduct of the   affairs of an enterprise or enterprises, through a pattern of racketeering activity in violation of  Conn. Gen. Stat. § 53-394 et seq., as set forth within paragraphs 1-56 as though fully incorporated herein by reference.

60.     The acts by the Defendants designated in count one (1) constitutes a pattern of racketeering activity that has continued and escalated beginning in or around January 23, 2004 and continues to present date.

61.     The acts by the defendants designated in count one (1) constitutes prohibited activities in violation of  Conn. Gen. Stat. § 53-395 for the Defendants have received income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which they have participated to use or invest, directly or indirectly, any part of the income, or the proceeds of the income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in or the activities of which affect trade or commerce.

62.     The aforementioned acts by Wells Fargo, Guardian constitutes identity theft in violation of CGS § 53a-129b wherein the Defendants knowingly used the Plaintiff's personal identifying information to obtain or attempt to obtain money, credit, goods, services, or property deriving from the fraud in factum transaction complained of herein, and without the consent of the Plaintiff.

63.     The aforementioned acts by WFB and Guardian constitutes trafficking in personal identifying information in violation of CGS § 53a-129e wherein the Defendants have sold, given, or otherwise transferred personal identifying information of the Plaintiff knowing that such information derives from the fraud in factum transaction complained of herein, knowing that such information has been obtained without the authorization of Plaintiff, and Defendants intended to use such information for an unlawful purpose.

64.     The aforementioned acts by WFB and Guardian constitutes criminal impersonation in violation of CGS § 53a-130 wherein the Defendants have impersonated a tradename, WFB, as the lender that suffered a loss of $205,000 on December 23, 2003 knowing otherwise to be true, and misrepresenting BANA to be the owner of the fraud in factum transaction complained of herein knowing otherwise to be true, with intent to obtain a benefit or to injure or defraud the Plaintiff; or with intent to obtain a benefit or to injure or defraud Plaintiff; or with intent to defraud, deceive or injure Plaintiff and such acts resulted in personal injury or financial loss to Plaintiff and the initiation of judicial proceedings against Plaintiff.

65.     The aforementioned acts by WFB and Guardian constitutes forgery in violation of CSG § 53a-139 wherein the Defendants, with intent to defraud, deceive or injure Plaintiff, falsely made, completed or altered written instruments or issued or possessed

written instruments which they knew to be forged, which is or purports to be, or which is calculated to become or represent if completed: (1) a contract, assignment, commercial instrument or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status; or (2) a public record or an instrument filed or required or authorized by law to be filed in or with a public office or public servant; or (3) written instruments officially issued or created by a public office, public servant or governmental instrumentality.

66.     The aforementioned acts by WFB and Guardian constitutes criminal simulation in violation of CGS § 53a-141 wherein the Defendants, with knowledge of its true character and with intent to defraud, issued or possessed falsely made security instruments encumbering title to Plaintiffs' real property.

67.     The aforementioned acts by WFB and Guardian constitutes tampering with or fabricating physical evidence in violation of CGS § 53a-155 wherein, believing that an official proceeding was pending, or about to be instituted, the Defendants: (1) altered, destroyed, concealed or removed any record, document or thing with purpose to impair its verity or availability in such official proceeding; or (2) made, presented or used any record, document or thing knowing it to be false and with purpose to mislead a public servant who is or may be engaged in such official proceeding.

68.     The acts by the Defendants constitutes mail fraud in violation of 18 U.S.C. §1341 for the defendants devised a scheme to defraud, obtain money, or the subject property by means of false or fraudulent pretenses, representations, or promises, to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use counterfeit obligations, securities, for the purpose of executing such scheme or

artifice, placed in post offices or authorized depository for mail matter, to be sent or delivered by the Postal Service, deposited, or caused to be deposited, to be sent or delivered by private or commercial interstate carrier, or knowingly caused to be delivered by mail or such carrier.

69.     The acts WFB and Guardian constitutes fictitious names and addresses in violation of 18 U.S.C. §1342 for the defendants, for the purpose of conducting promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in section 1341, or any other unlawful business, used or assumed, or requested others to be addressed by, fictitious, false, or assumed titles, or names, other than their own proper names.

70.     The acts by the Defendants constitutes wire fraud in violation of 18 U.S.C. §1343 for the defendants devised or intended to devise a scheme or artifice to defraud, for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted by means of wire in interstate commerce, writings for the purpose of executing such scheme or artifice.

71.     The acts by the Defendants constitutes transportation of stolen goods, securities, moneys, and or articles used in counterfeiting in violation of 18 U.S.C. § 2314 for the defendants transported, transmitted, or transferred in interstate commerce, securities of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud, and devised a scheme or artifice to defraud, for obtaining money or property from the Plaintiff by means of false or fraudulent pretenses, representations, or promises, transported or caused to be transported interstate in the execution or concealment of a scheme or artifice to defraud the Plaintiff of money or property having

a value of $5,000 or more, with unlawful or fraudulent intent, transported in interstate commerce falsely made, forged, altered, or counterfeited securities knowing the same to have been falsely made, forged, altered, or counterfeited.

72.     The acts by the Defendants constitutes interference with commerce by threats or violence in violation of 18 U.S.C. § 1951 for the defendants have: (a) obstructed, delayed, or affected commerce by robbery or extortion or attempted or conspired so to do, or committed or threatened physical removal of Plaintiffs from the subject property, and the taking of the subject property under color of official right.

73.     The aforementioned acts by the Defendants constitutes laundering of falsely made

monetary instruments in violation of 18 U.S.C. § 1956 because the Defendants: (1) knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducted or attempted to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity, with (i) the intent to promote the carrying on of specified unlawful activity; or (ii) the intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or  knowing that the transaction is designed in whole or in part (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or (ii) to avoid a transaction reporting requirement under State or Federal law.

74.     The aforementioned acts by the Defendants constitutes engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957 upon the Defendants knowingly engaging or attempting to engage in a monetary

transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity.

75. The acts by the Defendants constitutes misprision of felony in violation of 18 U.S.C. § 4 for the defendants had knowledge of the actual commission of a felony cognizable by

a court of the United States, and concealed said knowledge, and did not as soon as possible make known the same to some judge or other person in civil or authority under the United States.

76.    The acts by the Defendants constitutes conspiracy against rights in violation of 18

U.S.C. §241 for the defendants conspired to injure, oppress, threaten, or intimidate the Plaintiff in the free exercise or enjoyment of rights or privilege secured to Plaintiffs by the Constitution and laws of the United States, including but not limited to: (i) the right to contract; (ii) the right to own, maintain, and be secure in Plaintiffs' property right from unlawful seizures; AND (iii) to be free of usury.

77.    The aforementioned acts on the part of the Defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the plaintiff.

78. The acts by the Defendants violates Conn. Gen. Stat. § 53-394 et seq. and has caused injury to the Plaintiff in actual damages of emotional distress, loss of monies paid by the Plaintiff towards a fraud in factum "mortgage transaction", and other costs to defend Plaintiff's real property and reputation.

79.    Plaintiff has been damaged thereby.

COUNT THREE    VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT, AND ACTIONABLE PURSUANT TO CONN. GEN. STAT. §§ 42-110A THROUGH 42-110Q ET SEQ.

1 - 56. The Plaintiff adopts the factual allegations set forth above in paragraphs 1-56 as though fully set for herein by reference and made a part of this Count Three.

57.     The Defendants have each used or caused to be employed by other persons unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, and knowingly concealed, suppressed, and omitted material facts with intent that the Plaintiff relied upon such concealment, suppression or omission, in connection with the "origination", "foreclosure", and/ or discharge of the "mortgage transactions" complained of herein.

58.     The unfair, deceptive, and unlawful practices by the Defendants misled and deceived the Plaintiff, resulting in damages thereby, constituting unlawful practices in violation of Conn. Gen. Stat. § 42-110b (a), and has caused injury to Plaintiff in actual and punitive damages as contemplated by Conn. Gen. Stat. § 42-110g (a) for emotional distress, loss of monies paid towards fraud in factum "mortgage transactions", and other costs to defend Plaintiff's property and reputation.

59.     The actions of the Defendants, individually and/or jointly, were performed in direct contradiction to their promises of superior services and conduct, but instead for their own financial self-interests, in detriment to the rights and position of the Plaintiff.

60.     Plaintiff has been damaged thereby.

COUNT FOUR      FEDERAL FAIR DEBT COLLECTION PRACTICES ACT
PURSUANT TO  15 U.S.C. §1692; ACTIONABLE
PURSUANT TO 15 U.S.C. §1692K

1 - 56. The Plaintiff adopts the factual allegations set forth above in paragraphs 1-56 as
though fully set for herein by reference and made a part of this Count Four.

57.    The Defendants designated in paragraphs 1-56 have each acted in the capacity
of debt collectors for the fraud in factum "mortgage loan" in dispute as defined by the
Federal FDCPA, none of the Defendants have evidence of being a creditor for the
"mortgage loan", and each Defendant has:    (i) made false representations of the
character, amount, and legal status of the debt in dispute, and the services rendered or
compensation which may be lawfully received by the defendants as debt collectors for
the collection of the debt in dispute; (ii) made the representation or implication that
nonpayment of the debt in dispute will result in the sale of the subject property; (iii) used
false representations and deceptive means to collect or attempt to collect the debt in
dispute by willfully misrepresenting that a tradename, WMB-FA, suffered a loss of
$205,000 on December 23, 2003 knowing otherwise to be true.; and (iv) used false
representations and deceptive means to collect or attempt to collect the debt in dispute
by creating forged and/or falsely acknowledged instruments misrepresenting the
ownership and transfer of the "mortgage loan" in dispute, displaying imposters, and/or
false notarizations, and false considerations declared paid.

58.    The unlawful debt collection practices by the Defendants constitutes false and
misleading representations in violation of the Federal FDCPA and has caused injury to
the Plaintiffs as contemplated by 15 U.S.C.  §1692 et seq., in actual damages of

emotional distress, loss of monies paid by the Plaintiffs towards a fraud in factum debt, and other costs to defend the Plaintiffs' property and reputation.

59.     Plaintiff has been damaged thereby.


COUNT FIVE        VIOLATION OF THE FAIR CREDIT REPORTING ACT (THE "FCRA"), 15 U.S.C. § 1681, et seq.

1 - 56. The Plaintiff adopts the factual allegations set forth above in paragraphs 1-56 as though fully set for herein by reference and made a part of this Count Four.

57.     Defendants have violated the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681, et seq.

58.     At all times pertinent hereto, Defendants were a "person" as that term is defined by 15 U.S.C. § 1681a(b).

59.     During the course of the issues in this matter, Defendants reported false and derogatory information to a number of credit reporting agencies regarding Plaintiff' account.

60.     Thus, Defendants violated sections 1681n and 1681o of the FCRA by engaging in the following conduct:

        a. willfully and negligently reporting false derogatory information to various credit reporting agencies regarding Plaintiff' account;

        b. willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiff disputed;

        c. willfully and negligently failing to review all relevant information concerning Plaintiff' account provided to Defendants;

d. willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

e. willfully and negligently failing to report the inaccurate status of the inaccurate information to all credit reporting agencies;

f. willfully and negligently failing to properly participate, investigate, and comply with the reinvestigations that were conducted by any and all credit reporting agencies concerning the inaccurate information disputed by Plaintiff;

g. willfully and negligently failing to provide any and all credit reporting agencies with the factual information and evidence that Plaintiff submitted to Defendants, and which proved that the information concerning Plaintiff' credit reports was inaccurate;

h. willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account, and other information concerning Plaintiff to the credit reporting agencies and other entities; and

i. willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1581s-2(b).

61.     Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages, and harm to Plaintiff in this matter.

62.     Plaintiff has been damaged thereby.


COUNT SIX          FRAUDULENT CONCEALMENT

1 - 56. The Plaintiff adopts the factual allegations set forth above in paragraphs 1-56 as though fully set for herein by reference and made a part of this Count Six.

57.    The Defendants to Count Seven have each fraudulently concealed from the Plaintiff: (i) material facts underlying the character, legality, ownership, and possession of the "mortgage transaction" in dispute, (ii) with knowledge of the material facts, knowing material facts were not within reasonably diligent attention, observation, and judgment of the Plaintiff, (iii) while the defendants suppressed and or concealed the material facts with the intention that the Plaintiff be misled as to the character, legality, ownership, and possession of the "mortgage transaction" in dispute, (iv) the Plaintiff was reasonably so misled; and (v) causing injury to the Plaintiff in actual damages of emotional distress, loss of monies paid by the Plaintiff towards a fraud in factum "mortgage transaction", and other costs to defend the Plaintiff's property and reputation.

58.    Plaintiff has been damaged thereby.


COUNT SEVEN            UNJUST ENRICHMENT

1 - 56. The Plaintiff adopts the factual allegations set forth above in paragraphs 1-56 as though fully set for herein by reference and made a part of this Count Seven.

57.    In establishing a claim for unjust enrichment, plaintiff shows both that defendant received a benefit and that retention of that benefit without payment would be unjust.

58.    As a result of its misrepresentations underlying the fraud in factum "mortgage loan" in dispute, and or any modifications thereof, the Defendants have been unjustly enriched at the expense of the Plaintiff.

59.    Defendants, either through intentional actions or gross negligence, are attempting to gain possession of Plaintiff's house through an unlawful sale.

60.     Defendants are attempting to receive a benefit, unjustly, through the sale of Plaintiff's home.

61.     The aforementioned acts on the part of the defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiff.

62.     Plaintiff has been damaged thereby.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff request that this Court enter judgment in her favor and against Defendants, as follows:

a. Awarding Plaintiff actual damages against Defendants;

b. Awarding Plaintiff damages for emotional distress against Defendants;

c. Awarding Plaintiff attorneys' fees and costs against Defendants;

d. Awarding Plaintiff punitive damages against Defendants;

e. Imposing any other appropriate monetary sanctions against Defendants; and

f. Any other relief that this Court deems just and proper.

THE PLAINTIFF

BY: _____

1020 Old Town Road

Trumbull, CT  06611